# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

DUANE LUVERNE YATES,

       Petitioner,

vs.

WARDEN PATTY WACHTENDORF,

       Respondent.

No. C17-4059-LTS

**MEMORANDUM OPINION
AND ORDER**

---

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................. 2

II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................... 3

     A.     The Conviction ...................................................... 3

     B.     PCR-1 ................................................................ 6

         1.     Dismissal of PCR-1 ...................................... 7

         2.     Attempts to Reinstate and Reopen PCR-1 .......... 10

     C.     PCR-3 ............................................................... 11

     D.     Resentencing ..................................................... 13

     E.     PCR-4 ............................................................... 14

     F.     PCR-5 ............................................................... 15

     G.     Yates' Other Federal Cases .................................. 15

     H.     The Present Petition ........................................... 16

III.   MOTION TO STRIKE YATES' PRO SE SUPPLEMENTAL
       BRIEF ................................................................... 17

IV.   MOTION TO DISMISS STANDARDS ................................... 19

*V.*      *DISCUSSION*.................................................................*20*

      *A.*     *Habeas Corpus Standards*......................................*21*

      *B.*     *Statute of Limitations*..........................................*22*

           *1.*     *Date Judgment Became Final*........................*22*

           *2.*     *Statutory Tolling*........................................*25*

           *3.*     *Equitable Tolling*.......................................*26*

                *a.*     *Extraordinary Circumstances*................*27*

                *b.*     *Diligence*.........................................*32*

*VI.*    *CERTIFICATE OF APPEALABILITY*..............................*35*

*VII.*   *CONCLUSION*................................................................*37*

## *I.*    *INTRODUCTION*

This matter is before me on two motions. The first is respondent Patty Wachtendorf's motion (Doc. No. 16) to dismiss Duane Yates' § 2254 petition (Doc. No. 1), arguing the petition is untimely and contains allegations that were not properly exhausted. Yates has filed a resistance (Doc. No. 32) and Wachtendorf has filed a reply (Doc. No. 35). On April 5, 2019, I held a hearing on the motion. *See* Doc. No. 65. Wachtendorf filed a supplemental brief following the hearing. Doc. No. 76. Yates filed a supplemental brief through his counsel (Doc. No. 77-1) as well as a pro se supplemental brief (Doc. No. 77-2). Wachtendorf waived the filing of a supplemental reply brief. Doc. No. 83.

The second motion is Wachtendorf's motion (Doc. No. 78) to strike and seal Yates' pro se supplemental brief (Doc. No. 77-2). Yates has filed a resistance. Doc. No. 79. I previously granted the motion to seal and reserved ruling on the motion to strike. Doc. No. 80.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    The Conviction

In August 2002, Yates was convicted of one count of sexual abuse in the second degree in violation of Iowa Code § 709.3(2) (2001). *State v. Yates*, No. 02-1681, 2003 WL 22697964, at *1 (Iowa Ct. App. Nov. 17, 2003). The Iowa Court of Appeals summarized the facts and trial proceedings of the state conviction as follows:

> Duane and Martha Yates were married from November 1999 to April 2001. Martha's daughter, Amanda, often visited Duane and Martha at their home with her two sons, J.R. and A.D. The boys would often spend the night at the Yate's home and J.R. even resided with them for a period of time. This case arose from allegations by A.D. and J.R. that Duane Yates (Yates) had "molested" them. A.D. was eleven years old at the time of trial and J.R. was thirteen.

> The State initially filed a trial information charging Yates with three counts of sexual abuse in the second degree and one count of lascivious acts with a child concerning A.D., and two counts of lascivious acts with a child concerning J.R. The State later amended the trial information to charge one count of sexual abuse in the second degree in violation of Iowa Code sections 709.1 and 709.3(2) concerning A.D. (Count I), one count of lascivious acts with a child in violation of section 709.8 concerning A.D. (Count II), and one count of lascivious acts with a child in violation of section 709.8 concerning J.R. (Count III). Each count alleged Yates had a prior conviction for a sexually predatory offense and sought sentencing enhancement pursuant to sections 901A.1(1)(a), 901A.1(2), and 901A.2(3).

> Prior to trial Yates filed a motion in limine concerning his conviction in November of 1992 for sexual abuse in the third degree. The court ruled that the State was not to mention the previous conviction in its case in chief, but reserved ruling as to whether such conviction could be inquired into under Iowa Rule of Evidence 5.609 for impeachment purposes until after the direct testimony by Yates.

> At the close of the State's case in chief Yates moved for a judgment of acquittal. The trial court granted the motion as to the two counts of lascivious acts with a child (Counts II and III) and denied it as to the sexual abuse charge (Count I).

3

During the presentation of the defense Yates called Maurice Rawe, the chief deputy city attorney for the city of Sioux City, as a character witness. Rawe testified that in his opinion Yates was a truthful person, and that Yates had a reputation of being a truthful person. During cross-examination the State requested that it be allowed to question Rawe about his knowledge of Yate's prior conviction. The court made a detailed ruling on the record. It noted that Yates had presented evidence of his character for truthfulness despite the fact his character for truthfulness had not been attacked, a violation of Iowa Rule of Evidence 608. It nevertheless denied the State's request and sustained Yate's objection to any such inquiry by the State at that time.

Yates later testified on his own behalf. He testified that both Martha and Amanda worked for his company and had misappropriated funds from his business. He further testified that he had "sued and won" monetary damages from Amanda and Martha for their misappropriation of funds. He also stated that his divorce from Martha was acrimonious and there were several legal proceedings pending between the two, including a child in need of assistance proceeding and a contempt charge against Martha for failing to comply with the divorce decree. After Yate's direct testimony the State requested that the court allow it to cross-examine Yates about his prior felony conviction for impeachment purposes.

After another detailed analysis of the issue on the record, the court found that the probative value of admitting evidence of the conviction did not outweigh its prejudicial effect *if* the jury was allowed to know what the conviction was for. However, the court reasoned further that it was not right

> that this defendant take the stand and appear as a well-respected citizen in this community who is vouched for by the city attorney, got all these business dealings and got an insurance man on the stand for him and making a lot of critical statements about his former wife and making statements enhancing his credibility about how we got a judgment over in federal court against somebody. I just think that its probably necessary for this jury, if they're going to truly, correctly and, hopefully, in the best manner evaluate [Yate's] credibility that they do know that he's got a felony conviction.

The court therefore allowed the prosecutor to ask Yates whether he had a prior felony conviction, but prohibited the State from presenting evidence of what the conviction was for. The State asked Yates whether he had been convicted of a felony. He answered, "Yes." Neither the State nor Yates

presented any evidence as to the nature of the conviction or when it had occurred.

The jury found Yates guilty of sexual abuse in the second degree against A.D. [Count I.] The court sentenced Yates to a term of imprisonment required by law.

*Id.* at *1–2. The trial court applied a mandatory enhancement to Yates' sentence because he had been previously convicted of a sexually predatory offense. *See State v. Yates*, No. 12-2273, 2014 WL 2600212, at *1 (Iowa Ct. App. June 11, 2014). This raised Yates' term of imprisonment from 25 years to 50 years. *See id.*

Yates appealed.[1] *Yates*, 2003 WL 22697964, at *2. He argued that his trial counsel was ineffective for failing to conduct any meaningful cross-examination of A.D. and for failing to request a mistrial or to strike the testimony of J.R. after the court granted his motion for judgment of acquittal on Counts II and III. *Id.* He further argued the trial court committed error in allowing the State to use a prior criminal conviction to impeach him. *Id.* On November 17, 2003, the Iowa Court of Appeals affirmed the trial court on the evidentiary issue and deferred Yates' arguments regarding ineffective assistance of counsel for postconviction relief (PCR) proceedings. *Id.* at *4. The Iowa Supreme Court declined further review on February 6, 2004. *See* Doc. No. 32-1 at 3; Doc. No. 76 at 7.

After the conclusion of direct appeal, Yates continued to file various motions in his criminal case that were denied by the trial court. *See, e.g.*, Motion for Reconsideration of Sentencing and Resentencing, *State v. Yates*, No. FECR050208 (Iowa Dist. Ct. Woodbury Cty. June 16, 2006); Motion to Vacate Judgment, *State v. Yates*, No. FECR050208 (Iowa Dist. Ct. Woodbury Cty. Mar. 13, 2008); Motion to Void Judgment on Newly Discovered Evidence, *State v. Yates*, No. FECR050208 (Iowa Dist.

---

[1] Yates separately appealed the trial court's restitution order. *States v. Yates*, No. 03-1268, 2005 WL 425458, at *1 (Iowa Ct. App. Feb. 24, 2005). The Iowa Court of Appeals affirmed the restitution order. *Id.*

Ct. Woodbury Cty. Jan. 12, 2011); Motion for New Trial and Review of Facts After the Verdict, *State v. Yates*, No. FECR050208 (Iowa Dist. Ct. Woodbury Cty. Mar. 20, 2013); Motion to Correct an Illegal Sentence, *State v. Yates*, No. FECR050208 (Iowa Dist. Ct. Woodbury Cty. Oct. 18, 2017). Yates also filed a petition for writ of certiorari with the United States Supreme Court. *See* Doc. No. 16-1 at 4. The Supreme Court denied the petition on October 1, 2007. *Yates v. Iowa*, 552 U.S. 869 (2007). It is not clear from the record whether the petition related to the direct appeal or one of the later motions filed by Yates.

## B.     PCR-1

Yates filed his first PCR application on June 4, 2004. *See* Application, *Yates v. State*, No. PCCV129517 (Iowa Dist. Ct. Woodbury Cty. June 4, 2004). On July 2, 2004, Yates filed a second PCR application. *See* Application, *Yates v. State*, No. PCCV129697 (Iowa Dist. Ct. Woodbury Cty. July 2, 2004). In the two PCR applications, Yates contended he was entitled to relief because:

> (1) the conviction or sentence violated the Constitution or otherwise violated applicable law; (2) that the sentence was in excess of the maximum authorized by law; (3) that evidence of material facts that had not previously been presented required vacation of his sentence or conviction; and (4) that he was unlawfully held in custody.

Doc. No. 16-2 at 7. Attorney Tim Scherle was appointed to represent Yates in these cases. Doc. No. 65 at 62:17–19. Yates testified at the hearing that during the representation he "probably sent [Scherle] at least one letter a week if not two" and "probably called him at least once to twice a week if not more often." *Id.* at 63:11–64:8. Scherle described Yates as very detail-oriented, meticulous and involved in his own proceedings. *See id.* at 48:5–11.

## 1. Dismissal of PCR-1

On July 28, 2005, due to inactivity in the cases, the Woodbury County Clerk of Court's office filed notices in both cases that they would be dismissed pursuant to Iowa Rule of Civil Procedure 1.944[2] on January 1, 2006, if they were not tried before that date. Doc. No. 61-1 at 15; *see also* Doc. No. 16-2 at 7. However, on December 27, 2005, the trial court ordered the consolidation of PCCV129517 and PCCV129697[3] and the "try or dismiss" deadline was continued to June 30, 2006.[4] Doc. No. 58-4; *see also* Doc. No. 16-2 at 7. Scherle received a copy of this order, but Yates did not. *See* Doc. No. 65 at 42:8–23, 64:14–65:11. Rebecca Morehead, a clerk's office employee, testified at the hearing that only attorneys would receive this type of order and this order was personally served on Scherle. *See id.* at 31:21–32:4, 33:20–24.

Yates testified that he contacted Scherle every few weeks to ensure PCR-1 was active. *Id.* at 65:4–18. He testified that Scherle always replied that it was. *Id.* PCR-1 was not tried by the June 30, 2006 deadline, but the case was not immediately dismissed. On July 3, 2006—after the deadline but before any notice was filed that the case had been dismissed—Yates sent a request to the county clerk's office for a copy of PCR-1's docket. Doc. No. 60-1; *see also* Doc. No. 16-2 at 8. Yates testified at the hearing that he never

---

[2] Rule 1.944(2) provides that a civil case shall be tried within one year from the date it is filed and "[a]ll such cases shall be assigned and tried or dismissed without prejudice at plaintiff's costs unless satisfactory reasons for want of prosecution or grounds for continuance be shown by application and ruling thereon after notice and not ex parte." Iowa R. Civ. P. 1.944(2).

[3] I will refer to PCCV129517 and PCCV129697 collectively as PCR-1.

[4] The order specifically stated, in part: "[t]hese matters be continued until June 30, 2006, at which time it shall stand dismissed unless tried or further continued prior to said date." Doc. No. 58-4.

received a response.[5]  Doc. No. 65 at 84:1–13.  On August 9, 2006, the clerk's office filed a dismissal notice stating PCR-1 had been dismissed pursuant to Rule 1.944 as of July 1, 2006.  Doc. No. 36-3; *see also* Doc. No. 16-2 at 8.  The dismissal notice was not sent to Scherle or Yates.  *See* Doc. No. 65 at 34:15–35:2.  However, Scherle was aware the case would be dismissed on June 30, 2006, if it was not tried or further continued because he received the order extending the try or dismiss deadline.  *See id.* at 31:21–32:4, 33:20–24, 42:8–23.

In February 2007, Scherle visited Yates in prison to discuss trial prep, witnesses and subpoena issues.  *Id.* at 66:8–15; *see* Doc. No. 36-2 at 1.  At this meeting, Yates again asked Scherle if the case was still active and Scherle replied "[w]e're all current" and the case was "probably [] set to go to trial later this fall."  Doc. No. 65 at 66:24–67:6; *see also* Doc. No. 36-2 at 1.  Scherle does not dispute that he said something along these lines.  *See* Doc. No. 65 at 45:5–12.  On February 16, 2007, Yates sent another request to the county clerk's office for a copy of PCR-1's docket.  Doc. No. 60-2.  Yates explained at the hearing he filed this request because he never received a response to his July 3, 2006 request.  *See* Doc. No. 65 at 84:16–85:4.  Yates testified that he again did not receive a response.[6]  *Id.* at 84:14–85:6.

On June 6, 2008, after becoming concerned that nothing had happened in PCR-1, Yates attempted to file a motion to set a court date.  Doc. No. 36-4; *see* Doc. No. 65 at 67:16–68:16.  The motion was returned to Yates with a note from the county clerk's

---

[5] A note on the bottom of the request states: "[c]opies of file to date and docket mailed to Duane Yates 7/10/06."  Doc. No. 60-1.  However, Morehead testified she is unable to confirm the file and docket were sent to Yates because there is no record of mailing.  *See* Doc. No. 65 at 36:9–23.

[6] Again, a note at the bottom of the request states: "[c]opy of docket mailed to Duane Yates @ above address 2/22/07."  Doc. No. 60-2.  However, Morehead testified she is unable to confirm the file and docket were sent to Yates because there is no record of mailing.  *See* Doc. No. 65 at 36:9–23.

office stating PCR-1 was dismissed pursuant to Rule 1.944 on July 1, 2006. Doc. No. 36-4 at 1. Yates testified he immediately called Scherle upon receiving the note, extremely upset with Scherle's handling of the case. *See* Doc. No. 65 at 68:17–69:8. Yates alleges Scherle then told him that he would get PCR-1 reinstated and there was "no problem" in doing that. Doc. No. 36-2 at 1. After this phone call, Yates claims he had a difficult time communicating with Scherle and that Scherle became "real vague" with him.[7] *See* Doc. No. 65 at 70:14–72:6. Yates also claims that he never heard from Scherle again after this phone call. Doc. No. 36-2 at 1.

Yates testified that up until June 2008 he did not know PCR-1 was dismissed or even subject to dismissal. *See* Doc. No. 65 at 69:17–70:6. Scherle does not dispute this. *See id.* at 46:19–23. Scherle testified that he was "quite certain" Yates would have let him know about the dismissal deadline had he known about it. *Id.* at 58:8–13. While Scherle knew about the June 30, 2006, deadline, he testified that he was unaware the case was dismissed until June 2008, when Yates called him. *Id.* at 49:8–18. Scherle testified that he was under the impression he would have received a notice at the time of dismissal or before dismissal. *Id.* at 49:16–17. Scherle seems to have intended to wait for a notice of dismissal before taking any steps to prevent dismissal from occurring. *See id.* at 56:18–58:2.

---

[7] Yates also testified that he filed an ethics complaint after this phone call. *See* Doc. No. 65 at 69:7–8. On August 18, 2014, Scherle received a public reprimand from the Iowa Supreme Court because of his handling of Yates' case. *See* Order of Public Reprimand, *Iowa Supreme Court Attorney Disciplinary Board v. Scherle*, No. 14-0698 (Iowa Aug. 18, 2014). According to the Iowa Judicial Branch website, this was one of four reprimands Scherle received between 2012 to 2016. *See* https://www.iacourtcommissions.org/icc/ViewLawyer.do?id=11377 (last viewed Oct. 31, 2019). A review of the other three letters of reprimand indicates that they, too, arose from failures to diligently pursue his clients' cases.

## 2. *Attempts to Reinstate and Reopen PCR-1*

When a case has been dismissed pursuant to Iowa Rule 1.944, it may be reinstated "upon a showing that such dismissal was the result of oversight, mistake or other reasonable cause," provided that the application for reinstatement is filed "within six months from the date of dismissal." Iowa R. Civ. P. 1.944(6). Because PCR-1 was dismissed on July 1, 2006, it could have been reinstated until January 1, 2007. However, Scherle did not file a motion to reinstate PCR-1 until June 20, 2008. Doc. No. 61-1 at 19–20; *see also* Doc. No. 16-2 at 9. Scherle characterizes his failure to prevent dismissal or apply for reinstatement within the proper timeframe as an "oversight." Doc. No. 65 at 50:14.

The trial court denied the motion to reinstate. *Yates v. State*, No. 08-1879, 2009 WL 3064427, at *1 (Iowa Ct. App. Sept. 17, 2009). The Iowa Court of Appeals affirmed the dismissal, holding that "[t]he trial court correctly ruled that it lacked jurisdiction to reinstate the case" because Yates did not request reinstatement within the six months allowed by Rule 1.944(6). *Id.* at *2. Yates claims he did not know that Scherle filed a motion to reinstate and appealed the denial of the motion until he filed PCR-3 in 2011. Doc. No. 36-2 at 1; Doc. No. 65 at 73:3–74:4.

On February 24, 2016, Yates filed a pro se motion to reopen PCR-1, arguing "the dismissal was the result of the ineffective assistance of his first PCR counsel and amounted to a structural error in the PCR proceedings that entitles him to reopen the matter." *Yates v. State*, No. 16-1328, 2018 WL 3650279, at *1 (Iowa Ct. App. Aug. 1, 2018). On August 3, 2016, the trial court denied the motion to reopen PCR-1. *Id.* at *1. On August 1, 2018, the Iowa Court of Appeals affirmed, holding Yates already had the opportunity to have his claims decided (see PCR-3, discussed below) and "[r]elitigation of previously adjudicated issues is barred" by principles of claim preclusion. *Id.* at *2 (internal quotation omitted). Yates filed a petition for writ of

certiorari with the United States Supreme Court, which was dismissed on March 18, 2019. *Yates v. Iowa*, 139 S. Ct. 1350 (Mem) (2019).

## C. PCR-3

Yates filed a third PCR application (PCR-3) on June 2, 2011.[8] *See* Application, *Yates v. State*, No. PCCV144681 (Iowa Dist. Ct. Woodbury Cty. June 2, 2011). In PCR-3, Yates made numerous claims related to ineffective assistance of counsel. *See* Doc. No. 16-2 at 11. Yates claimed that his trial counsel was ineffective for failing to use an alibi defense at trial, failing to object to the State's closing argument and not preserving Yate's speedy trial rights. *Id.* He also claimed his PCR-1 counsel (Mr. Scherle) was ineffective for failing to prosecute PCR-1. *Id.* Yates further contended that the sentencing enhancement that doubled his sentence from 25 to 50 years violated ex post facto principles and was therefore an illegal sentence. *Id.* at 10. Attorney Matthew Metzgar was appointed to represent Yates. Doc. No. 65 at 18:18–19. Metzgar testified at the hearing. He described having long phone conversations with Yates and receiving multiple letters from Yates regarding the issues in his case. *See id.* at 24:25–25:14.

The State filed a motion for summary judgment in PCR-3. *See* Doc. No. 16-2 at 10. On September 6, 2012, the trial court ruled in Yates' favor on the sentencing issue. *See id.* at 51. However, the court held that Yates' multiple ineffective assistance of counsel claims were untimely pursuant Iowa Code § 822.3.[9] *Id.* at 19. Specifically, the

---

[8] As noted above, PCR-1 was a consolidated action that encompassed Yates' first two PCR applications.

[9] Iowa Code § 822.3 provides that "[a]ll [PCR] applications must be filed within three years from the date the conviction or decision is final or, in the event of an appeal, from the date the writ of procedendo is issued." Notably, this statute of limitations "does not apply to a ground of fact or law that could not have been raised within the applicable time period." *Id.* In *Allison v. State*, 914 N.W.2d 866 (Iowa 2018), the Iowa Supreme Court held:

court held that Yates failed to raise a "ground of fact or law [that] could not have been raised" within three years after his conviction became final. *Id.* at 16. The court noted the "Iowa Supreme Court has already determined that a claim of ineffective assistance of postconviction counsel is not a ground of fact that could not have been raised within the meaning of section 822.3." *Id.* (citing *Dible v. State*, 557 N.W.2d 881, 884 (Iowa 1996)). Although the court held that Yates' ineffective assistance of counsel claims were barred by the statute of limitations, the court nevertheless went on to address the merits of some of Yates' claims, holding:

(1)    Scherle, acting as counsel for PCR-1, provided constitutionally ineffective assistance of counsel and Yates was prejudiced as a result. *Id.* at 20–22.

(2)    Trial counsel was not ineffective for failing to utilize an alibi defense because it was a reasonable strategic choice. *Id.* at 22–29.

(3)    Although the prosecutor's closing argument amounted to prejudicial prosecutorial misconduct, no prejudice resulted as a result of the Court's cautionary jury instructions and other measures. *Id.* at 29–37.

(4)    Trial counsel was not ineffective for "failing to protect" Yates' speedy trial rights, because the evidence showed that Yates formally waived these rights. *Id.* at 37–39.

---

[W]here a PCR petition alleging ineffective assistance of trial counsel has been timely filed per section 822.3 and there is a successive PCR petition alleging postconviction counsel was ineffective in presenting the ineffective-assistance-of-trial-counsel claim, the timing of the filing of the second PCR petition relates back to the timing of the filing of the original PCR petition for purposes of Iowa Code section 822.3 if the successive PCR petition is filed promptly after the conclusion of the first PCR action.

914 N.W.2d at 891. Before *Allison*, the rule in Iowa was the opposite. *See Dible v. State*, 557 N.W.2d 881, 884 (Iowa 1996) (holding that ineffective assistance of postconviction counsel is not a "ground of fact" within the exception to three-year statute of limitations for postconviction actions).

(5)     The amended trial information, which alleged a range of dates on which Yates was alleged to have committed the charged offense rather than an exact date, was not illegal under Iowa law. *Id.* at 39–41; *see also State v. Griffin*, 386 N.W.2d 529, 532 (Iowa Ct. App. 1986).

Yates strategically did not appeal the order granting partial postconviction relief. *See* Doc. No. 65 at 22:21–23:9. Metzgar testified that Yates "got such a favorable ruling on the illegal sentence that basically we didn't want the [S]tate to file a further review on that by appealing something that basically there was no remedy for we didn't feel at the time." *Id.* at 23:4–8. At the time, *Dible v. State* was still controlling law in Iowa and Metzgar thought it highly unlikely that it would be overruled on appeal. *Id.* at 23:10–23:25.

On September 3, 2014, Yates filed a pro se motion to reopen PCR-3. Doc. No. 16-4 at 10–11. The trial court denied the motion. *Id.* at 11. Yates appealed the denial but voluntarily dismissed the appeal on July 27, 2015. *Id.*

## D.     Resencencing

As discussed above, the court in PCR-3 held that Yates' sentence enhancement was illegal, concluding that it violated ex post facto principles. Doc. No. 16-2 at 51. Thus, on November 27, 2012, the trial court entered an order reducing Yates' sentence from 50 to 25 years. *Yates*, 2014 WL 2600212, at *1. Yates was not present for a resentencing hearing—it is not clear whether a hearing was held or whether the court simply issued an order. *Id.* Yates appealed the reduced sentence, arguing he had a right to be present at a resentencing hearing. *Id.* During the pendency of the appeal, the trial court entered two nunc pro tunc orders amending Yates' sentence to include an additional term of parole or work release not to exceed two years. *Id.* at *2. Yates also argued on appeal that his presence was required at a hearing when the nunc pro tunc orders were issued. *Id.*

The Iowa Court of Appeals held that Yates' presence was not required at a resentencing hearing because the reduced sentence benefited him, but his presence was required at a hearing when the nunc pro tunc orders were issued because they made his sentence "more onerous." *Id.* On remand, the trial court rescinded the nunc pro tunc orders and otherwise left the sentence in place. Doc. No. 16-3. The Iowa Court of Appeals affirmed this action. *State v. Yates*, No. 14-1774, 2015 WL 4936273, at *1 (Iowa Ct. of App. Aug. 19, 2015). The Iowa Supreme Court declined further review on October 12, 2015. *See* Doc. No. 16-1 at 11.

## E.    PCR-4

Yates filed his fourth PCR application (PCR-4) on December 18, 2014. *See* Application, *Yates v. State*, No. PCCV163350 (Iowa Dist. Ct. Woodbury Cty. Dec. 18, 2014). In PCR-4, Yates made numerous ineffective assistance of counsel claims concerning trial counsel and PCR-1 counsel. *See* Doc. No. 16-4 at 11–12. Attorney Tod Deck (now an Iowa District Court Judge) was appointed to represent Yates. Doc. No. 65 at 6:1–4. Judge Deck testified that during the representation Yates "was very diligent beyond the point that I probably thought was necessary." *Id.* at 8:5–6. Judge Deck also testified that Yates was clear with him from the beginning that "his position was he had never been notified of [the dismissal in PCR-1] until he was notified by the clerk" in June 2008. *Id.* at 15:13–18. The State filed a motion for summary judgment in PCR-4. *See* Doc. No. 16-4 at 12. On November 30, 2015, the trial court granted the State's motion based on the statute of limitations, relying again on *Dible v. State*, along with claim preclusion. *Id.* at 15. The Iowa Court of Appeals affirmed. *Yates v. State*, No. 16-0349, 2016 WL 7393896, at *1 (Iowa Ct. App. Dec. 21, 2016).

*F.*     *PCR-5*

On January 23, 2018, Yates filed his fifth PCR application (PCR-5). *See* Application, *Yates v. State*, No. PCCV179303 (Iowa Dist. Ct. Woodbury Cty. Jan. 23, 2018). The State filed a motion for summary judgment on January 26, 2018. *See* Motion for Summary Judgment, *Yates v. State*, No. PCCV179303 (Iowa Dist. Ct. Woodbury Cty. Jan. 26, 2018). PCR-5 was stayed on May 31, 2018, pending the final appellate resolution of Yates' attempt to reopen PCR-1. Doc. No. 16-6. It is not clear why the stay in PCR-5 has not yet been lifted, as there appears to be no currently pending appeal of PCR-1.

*G.*     *Yates' Other Federal Cases*

Before filing his present § 2254 petition, Yates filed other federal cases related to his criminal conviction and sentence. Since 2009, Yates has filed three § 2254 petitions challenging the loss of good time credits in prison, all of which were denied. *See Yates v. Baldwin*, No. C09-0140-LRR, Doc. No. 3 (N.D. Iowa Sept. 24, 2009); *Yates v. Fayram*, No. C10-0020-LRR, 2012 WL 322419, at *1 (N.D. Iowa Feb. 1, 2012); *Yates v. Fayram*, No. C14-0314-LRR, 2015 WL 5722801, at *3 (N.D. Iowa Sept. 29, 2015). Yates also brought a § 1983 action in 2009 against multiple defendants, including then-Iowa Governor Chet Culver, alleging various claims related to his treatment in prison, which was dismissed.[10]  *See Yates v. Baldwin*, No. C09-3004-MWB, 2009 WL 10678143, at *1 (N.D. Iowa Nov. 12, 2009).

---

[10] Notably, on May 29, 2009, Yates filed a motion to appoint Scherle to represent him. C9-3004-MWB, Doc. No. 10. In the motion Yates stated Scherle had helped him file the case. *Id.* In a deposition taken for PCR-4 on June 16, 2015, Scherle stated, "I filed an action in Federal District Court on [Yates'] behalf against either the State of Iowa or then Governor Chet Culver . . . . I know that case was dismissed because the governor was not a proper party to sue." Doc. No. 58-2 at 5.

In 2014, Yates and four other prisoners brought a § 1983 action against various prison officials for alleged violations of the First Amendment related to their ability to practice their religions. *See Bear v. Dietsch*, No. C14-0005-EJM, 2015 WL 134346, at *1 (N.D. Iowa Jan. 9, 2015). The prison officials' motion for summary judgment was granted because Yates and the other plaintiffs failed to exhaust administrative remedies. *Id.* at *3. In 2016, Yates filed a civil complaint against Scherle, alleging legal malpractice and various constitutional violations stemming from PCR-1. *See Yates v. Scherle*, No. C16-3087-LRR, 2016 WL 4467909, at *1 (N.D. Iowa Aug. 22, 2016). The court construed the complaint as a § 1983 action and concluded the complaint was barred by the statute of limitations and, even if it was not, Scherle was a private attorney and not acting under the color of state law for § 1983 purposes. *Id.* at *3–4.

## H.    The Present Petition

On September 26, 2017, Yates filed a pro se petition for writ of habeas corpus under 28 U.S.C. § 2254 (Doc. No. 1), as well as a pro se motion to proceed in forma pauperis (Doc. No. 2) and a pro se motion to appoint counsel (Doc. No. 3). In his petition, Yates alleges that his state conviction is constitutionally infirm as a result of: (1) the State failing to meet its burden of proof, (2) ineffective assistance of trial counsel, (3) denial of the right to counsel at resentencing, (4) ineffective assistance of PCR-1 counsel, (5) erroneous interpretation of the statute of limitations following resentencing, (6) erroneous jury instructions, (7) prosecutorial misconduct, (8) jury taint, (9) an illegal indictment, (10) a wrongly decided motion in limine, (11) an improper impeachment, (12) violation of the Fifth and Sixth Amendments, (13) a biased investigator, (14) speedy trial issues and (15) a failure to record the trial.[11] *See* Doc. No. 1. On April 24, 2018,

---

[11] Yates' petition alleges twenty-eight grounds for relief; however, many of them are duplicative. *See* Doc. No. 1. For simplicity's sake, and because I will not address the merits of his petition in this order, I have condensed, combined and summarized the petition into general allegations.

I entered an order (Doc. No. 4) denying as moot the motion to proceed in forma pauperis, reserving ruling on the motion to appoint counsel and directing Wachtendorf to respond to the petition.

On August 23, 2018, Wachtendorf filed the present motion to dismiss (Doc. No. 16), arguing that Yates' petition is barred by the applicable statute of limitations and he failed to exhaust his claims. On August 27, 2018, I issued an order (Doc. No. 17) granting Yates' motion to appoint counsel. On January 14, 2019, Yates filed a resistance (Doc. No. 32) to Wachtendorf's motion to dismiss, arguing that equitable tolling should be applied because of ineffective assistance of counsel in PCR-1 and cause and prejudice excuses Yates' failure to exhaust state remedies. On January 23, 2019, Wachtendorf filed a reply brief (Doc. No. 35) arguing Yates is not entitled to equitable tolling and cannot overcome procedural default. On January 28, 2019, Yates filed a motion for an evidentiary hearing (Doc. No. 36) and Wachtendorf filed a resistance on February 1, 2019 (Doc. No. 37).

On February 5, 2019, I issued an order (Doc. No. 41) granting Yates' request for a hearing on the statute of limitations and procedural default issues. I reserved ruling on Yates' request for a hearing on the merits of his petition. The evidentiary hearing took place on April 5, 2019. *See* Doc. No. 65. On August 13, 2019, Wachtendorf filed a supplemental brief (Doc. No. 76) and Yates filed a supplemental brief through counsel (Doc. No. 77-1) and a separate pro se supplemental brief (Doc. No. 77-2).

### III.    *MOTION TO STRIKE YATES' PRO SE SUPPLEMENTAL BRIEF*

Before addressing Wachtendorf's motion to dismiss, I will consider her motion (Doc. No. 78) to strike Yates' pro se supplemental brief (Doc. No. 77-2). Wachtendorf argues Yates is not entitled to both self-representation and representation by counsel. Doc. No. 78-1 at 2. Wachtendorf further argues Yates' pro se brief improperly refers to a minor victim's name and refers to and contains documents not properly admitted during

the hearing. *Id.* at 4–5. Yates argues that it is left to my discretion whether I consider arguments made by Yates pro se. *See* Doc. No. 79 at 1.

"Generally, it is Eighth Circuit policy to refuse to consider pro se filings when a party is represented by counsel." *Hoggard v. Purkett*, 29 F.3d 469, 472 (8th Cir. 1994). Defendants do not have a constitutional right to hybrid representation or the right to act as "co-counsel." *See United States v. Swinney*, 970 F.2d 494, 498 (8th Cir. 1992) ("[T]he district court may properly require the defendant to choose either to proceed pro se, with or without the help of standby counsel, or to utilize the full assistance of counsel . . . ."). It is within my discretion whether I consider Yates' pro se brief. *Compare Kennedy v. Burt*, No. C06-3010-LRR, 2007 WL 4919944, at *2 n.1 (N.D. Iowa Dec. 19, 2007) (petitioner not permitted to file pro se brief where he had appointed counsel), *and Dudley v. McKinney*, No. C15-3105-LTS, 2016 WL 9026150, at *5 (N.D. Iowa June 22, 2016) (court rejected petitioner's pro se brief where he had appointed counsel), *with Wilkins v. Ludwick*, No. C13-4024-MWB, 2014 WL 3587392, at *11 (N.D. Iowa July 21, 2014) (court considered petitioner's pro se brief to the extent it addressed issues raised by his counsel's briefs, but not other issues addressed in the pro se brief).

Most of Yates' pro se brief concerns matters outside the scope of the motion to dismiss. At issue now is whether Yates meets the requirements of equitable tolling and can show cause and prejudice to excuse procedural default. Only if Yates meets these requirements can I address the merits of his petition. However, much of Yates' pro se brief addresses the underlying merits of his petition and other issues not presently before me. Additionally, the brief violates local rules by including the full name of a minor. *See* Local Rule 10(g); Doc. No. 77-2 at 14, 23, 27. The few parts of the pro se brief that do address the procedural matters presently at issue are redundant because the arguments have largely already been made in other briefs filed by Yates' counsel.

Ultimately, I decline to consider Yates' pro se supplemental brief. He requested counsel and I granted that request. His counsel has briefed the issues relevant to the motion to dismiss. As such, the motion to strike will be granted.

## IV.     MOTION TO DISMISS STANDARDS

The Federal Rules of Civil Procedure authorize a pre-answer motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Supreme Court has provided the following guidance in considering whether a pleading properly states a claim:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555, 127 S. Ct. 1955 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555, 127 S. Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S. Ct. 1955.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570, 127 S. Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S. Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557, 127 S. Ct. 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).

Courts assess "plausibility" by "'draw[ing] on [our own] judicial experience and common sense.'" *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 679). Courts "review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation." *Id.* (citation omitted). While *factual* plausibility is typically the focus of a Rule 12(b)(6) motion to dismiss, federal courts may dismiss a claim that lacks a cognizable *legal* theory, such as failure to comply with the applicable statute of limitations or procedural requirements. *See, e.g.*, *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013); *Commonwealth Prop. Advocates, L.L.C. v. Mortg. Elec. Reg. Sys., Inc.*, 680 F.3d 1194, 1202 (10th Cir. 2011); *accord Target Training Int'l, Ltd. v. Lee*, 1 F. Supp. 3d 927, 937 (N.D. Iowa 2014).

In deciding a motion brought pursuant to Rule 12(b)(6), the court may consider certain materials outside the pleadings, including (a) "the materials that are 'necessarily embraced by the pleadings and exhibits attached to the complaint,'" *Whitney*, 700 F.3d at 1128 (quoting *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003)), and (b) "'materials that are part of the public record or do not contradict the complaint.'" *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 (8th Cir. 2012) (quoting *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)). Thus, the court may "consider 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned;' without converting the motion into one for summary judgment." *Miller*, 688 F.3d at 931 n.3 (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004)).

## V.    DISCUSSION

Wachtendorf argues that Yates' § 2254 petition is barred by the statute of limitations and he has failed to properly exhaust his claims. Although Yates concedes

that the statute of limitations has expired, he argues that equitable tolling applies. Yates further argues that ineffective assistance of PCR-1 counsel provides cause and prejudice so as to excuse exhaustion.

## A.    Habeas Corpus Standards

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." *Harrington v. Richter*, 562 U.S. 86, 91 (2011). However, 28 U.S.C. § 2254 "sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Section 2254(a) provides that a federal court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Here, Yates alleges multiple Fifth Amendment and Sixth Amendment violations occurred in his underlying state criminal trial, including ineffective assistance of trial counsel. *See* Doc. No 1.

A federal court's review of a state court decision under § 2254 is deferential. *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003). A state court decision on the merits should not be overturned unless it:

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

### B.     Statute of Limitations

A petition brought under § 2254 must be brought within one year of the latest of four triggering events:

(A)     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)–(D).  In this case, § 2244(d)(1)(A) is applicable.  However, the date on which Yates' state judgment became final is disputed by the parties.

### 1.     Date Judgment Became Final

The parties argue that Yates' judgment became final on either May 4, 2004—90 days after the Iowa Supreme Court denied further review of Yates' direct appeal—or January 10, 2016—90 days after the Iowa Supreme Court denied further review of Yates' resentencing appeal.[12]  *See* Doc. No. 32-1 at 10; Doc. No. 76 at 25–29.  Yates argues that under the United States Supreme Court's decision in *Magwood v. Patterson*, 561 U.S. 320 (2010), his resentencing created a new judgment and the statute of limitations

---

[12] Yates did not file a timely petition for certiorari with the United States Supreme Court for either decision.  Section 2244(d)(1)(A)'s one-year limitation period starts to run when the time for seeking a petition for certiorari expires.  *See* 28 U.S.C. § 2244(d)(1)(A).  A petition for certiorari must be filed within ninety days after entry of the judgment.  Sup. Ct. R. 13.1.

reset from when the new judgment became final (January 10, 2016).  *See* Doc. No. 32-1 at 9–10.  Wachtendorf argues that *Magwood* is inapplicable because Yates' § 2254 petition attacks his original criminal trial and judgment, not his resentencing.  *See* Doc. No. 76 at 26.  Wachtendorf also argues that *Magwood* is inapplicable because it interpreted the provisions of § 2244(b) governing second or successive petitions, not the statute of limitations found in § 2244(d)(1).  *See id.*  Wachtendorf further argues that even if *Magwood* is found to apply and Yates' judgment became final for statute of limitations purposes on January 10, 2016, Yates' petition is still untimely.  *See* Doc. No. 76 at 29.

In *Magwood*, the petitioner was sentenced to death for murdering a sheriff.  *Magwood*, 561 U.S. at 323.  After the state courts denied relief on direct appeal and in postconviction proceedings, Magwood filed a § 2254 petition challenging both his conviction and his sentence.  *Id.*  The federal district court conditionally granted the writ as to the sentence and mandated that Magwood either be released or resentenced.  *Id.*  The state trial court conducted a new sentencing hearing and again sentenced Magwood to death.  *Id.*  Magwood filed another § 2254 petition challenging this new sentence.  *Id.*  The Eleventh Circuit held that Magwood's new petition was an unreviewable "second or successive" challenge under 28 U.S.C. § 2244(b) because he could have mounted the same challenge to his original death sentence.  *Id.*  The Supreme Court reversed, holding § 2244(b) applies only to a "second or successive" petition challenging the same state-court *judgment*.  *Id.* at 331.  Because the Supreme Court found Magwood's resentencing was a new judgment, his second § 2254 petition was not a second or successive petition— it was his first petition challenging the new judgment.  *Id.*  Thus, *Magwood* adopted a judgment-based approach.  The Supreme Court expressly left open, however, whether "a petitioner who obtains a conditional writ as to his sentence [can] file a subsequent application challenging not only his resulting, *new* sentence but also his original, *undisturbed* conviction."  *Id.* at 342.

The circuits are split on the question left open by *Magwood*. Some circuits have found that a petition after resentencing challenging an undisturbed conviction is not second or successive. For these circuits, the new sentence acts as a new judgment and provides a reset to challenge the underlying conviction even if it was never disturbed. *See Johnson v. United States*, 623 F.3d 41, 46 (2d Cir. 2010); *In re Gray*, 850 F.3d 139, 143 (4th Cir. 2017); *King v. Morgan*, 807 F.3d 154, 156 (6th Cir. 2015); *Wentzell v. Neven*, 674 F.3d 1124, 1127–28 (9th Cir. 2012); *Insignares v. Sec'y, Fla. Dep't of Corrections*, 755 F.3d 1273, 1281 (11th Cir. 2014) (per curiam).

Other circuits have declined to extend *Magwood*, finding that a new sentence does not always act as a new judgment for the underlying conviction. *See In re Lampton*, 667 F.3d 585, 588–89 (5th Cir. 2012); *Suggs v. United States*, 705 F.3d 279, 282–83 (7th Cir. 2013). Notably, at least one circuit has declined to extend *Magwood* to the context of § 2244(d)(1). *See Romansky v. Superintendent Greene SCI*, 933 F.3d 293, 300 (3d Cir. 2019) (holding that a resentencing on some counts of conviction is not a new judgment as to the undisturbed counts of conviction and, therefore, the resentencing does not impose a new one-year statute of limitations period for the undisturbed convictions).

The Eight Circuit has yet to expressly answer the question *Magwood* left open. *See Dyab v. United States*, 855 F.3d 919, 923 (8th Cir. 2017) (holding an order amending the restitution portion of the petitioner's criminal judgment, but not changing the amount of restitution, did not result in a new judgment and, therefore, his second § 2255 petition arguing actual innocence was second or successive); *United States v. Brown*, 915 F.3d 1200, 1202 (8th Cir. 2019) (holding petitioner's § 2255 petition was second or successive because an intervening correction of a clerical error in his written judgment did not constitute a new judgment). For reasons that will become clear later in this opinion, I need not address the questions of whether *Magwood* should be extended to the statute of limitations found in § 2244(d)(1), or whether Yates' 2012 sentencing reduction constitutes a new judgment and resets Yates' one-year period to file his § 2254 petition. Regardless

of whether Yates' judgment became final on May 4, 2004, or January 10, 2016, my decision on whether equitable tolling applies remains the same.

### 2. *Statutory Tolling*

Next, I must determine whether statutory tolling applies to Yates' one-year statute of limitations to file a § 2254 petition. "The time during which a properly filed application for State post-conviction or other collateral review . . . is pending shall not be counted toward any period of limitation." 28 U.S.C. § 2244(d)(2). The term "pending" includes the time between the trial court's denial of postconviction relief and the timely filing of an appeal from the denial. *Beery v. Ault*, 312 F.3d 948, 950 (8th Cir. 2002) (citing *Peterson v. Gammon*, 200 F.3d 1202, 1203 (8th Cir. 2000)). But it does not include the time between the date direct review concludes and the date an application for state postconviction relief is filed. *Beery*, 312 F.3d at 950 (citing *Painter v. Iowa*, 247 F.3d 1255, 1256 (8th Cir. 2001)).

If the date on which Yates' judgment became final is May 4, 2004, statutory tolling applies from June 4, 2004, when Yates filed PCR-1, to July 31, 2006, thirty days after the trial court dismissed PCR-1. *See* Iowa R. App. P. 6.101(1)(b) (thirty days to file a notice of appeal in Iowa after the filing of the final order or judgment). The one-year statute of limitations then expired on July 1, 2007. Under this scenario, Yates must show that equitable tolling applies from July 1, 2007, to September 26, 2017, when he filed his § 2254 petition.

If the date on which Yates' judgment becomes final is January 10, 2016, then statutory tolling does not apply. The Supreme Court has held that where a state court rejects a postconviction relief petition as untimely, it is not properly filed. *Pace v, DiGuglielmo*, 544 U.S. 408, 414 (2005) ("When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2).") (quoting *Carey v. Saffold*, 536 U.S. 214, 226 (2002); *see also Beery*, 312 F.3d at 950 ("A properly

25

filed application is one that meets all the state's requirements."). Yates did not have a properly filed state PCR petition pending after January 10, 2016. *See Yates*, 2016 WL 7393896, at *1–2 (dismissing PCR-4 as untimely—a PCR which, based on the dates it was pending, could have supported a statutory tolling argument if it were timely); *Yates*, 2018 WL 3650279, at *1–2 (dismissing an attempt to reopen PCR-1 during the potential statutory tolling period as untimely). The statute of limitations then expired on January 10, 2017. Under this scenario, Yates must show that equitable tolling applies from January 10, 2017 to September 26, 2017.

### 3. *Equitable Tolling*

"[A] 'petitioner' is entitled to 'equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace*, 544 U.S. at 418 (emphasis deleted)) (holding that § 2244(d)(1), the statute of limitations for § 2254 petitions, is subject to equitable tolling in appropriate cases).[13] Equitable tolling is a flexible doctrine that—unlike exhaustion—is not bound by principles of federalism. *Id.* at 650 ("Equitable tolling . . . asks whether federal courts may excuse a petitioner's failure to comply with *federal* timing rules, an inquiry that does not implicate a state court's interpretation of state law."). However, "equitable tolling affords the otherwise time-barred petitioner an exceedingly narrow window of relief." *Jihad v. Hvass*, 267 F.3d 803, 805 (8th Cir. 2001). "The burden of demonstrating grounds warranting equitable tolling rests with the petitioner." *Earl v. Fabian*, 556 F.3d 717, 722 (8th Cir. 2009). The parties dispute whether Yates can meet either of the elements of equitable tolling.

---

[13] Section 2255 motions, filed by those in federal rather than state custody, are subject to the same equitable tolling standards as § 2254 motions. *See United States v. Martin*, 408 F.3d 1089, 1093 (8th Cir. 2005).

### a. Extraordinary Circumstances

The Eighth Circuit has consistently held that equitable tolling is appropriate in habeas cases only if extraordinary circumstances beyond the petitioner's control made it impossible to file on time. *See Jihad*, 267 F.3d at 805–06; *Earl*, 556 F.3d at 723; *Kreutzer v. Bowersox*, 231 F.3d 460, 463 (8th Cir. 2000); *Paige v. United States*, 171 F.3d 559, 561 (8th Cir. 1999). The Eighth Circuit has explained that "serious attorney misconduct, as opposed to mere negligence, 'may warrant equitable tolling'" in habeas cases. *United States v. Martin*, 408 F.3d 1089, 1093 (8th Cir. 2005) (quoting *Beery*, 312 F.3d at 952). Other circuits have also held that an attorney's misconduct may equitably toll the statute of limitations in extraordinary circumstances. *See, e.g.*, *Baldayaque v. United States*, 338 F.3d 145, 152 (2d Cir. 2003); *Nara v. Frank*, 264 F.3d 310, 320 (3d Cir. 2001), *overruled on other grounds by Carey v. Saffold*, 536 U.S. 214 (2002); *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002); *Spitsyn v. Moore*, 345 F.3d 796, 798 (9th Cir. 2003).

In 2010, the Supreme Court found in *Holland* that a "garden variety claim of excusable neglect," such as a simple "miscalculation" that leads a lawyer to miss a filing deadline, does not warrant equitable tolling. *Holland*, 560 U.S. at 651–52 (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)) (citing *Lawrence v. Florida*, 549 U.S. 327, 336 (2006)). But *Holland* rejected the Eleventh Circuit's rule that even attorney conduct that is "grossly negligent" can never warrant equitable tolling absent "bad faith, dishonesty, divided loyalty, mental impairment or so forth on the lawyer's part." *Id.* at 644, 651 (quoting *Holland v. Florida*, 539 F.3d 1334, 1339 (11th Cir. 2008)). Holland's attorney failed to file Holland's federal habeas petition on time despite Holland's many letters that repeatedly emphasized the importance of him doing so. *Id.* at 652. His attorney also apparently failed to do the research necessary to determine the proper filing date, despite Holland's letters that identified the applicable legal rules. *Id.*

Further, Holland's attorney failed to communicate with him on multiple occasions, despite various letters from him. *Id.* While not deciding whether the facts of the case met the extraordinary circumstances requirement, the Court suggested that the case presented serious instances of attorney misconduct that may meet the requirement on remand. *Id.* The Court noted that Holland's attorney violated fundamental canons of professional responsibility that require attorneys to perform reasonably competent legal work, communicate with their clients, implement clients' reasonable requests, keep their clients informed and never abandon a client. *Id.* at 652–53.

In *Martin*, the Eighth Circuit found equitable tolling appropriate where a petitioner failed to file a timely § 2255 petition due to his attorney's serious misconduct. *Martin*, 408 F.3d at 1095. Martin asked the attorney who represented him in his direct appeal of his criminal conviction to file a § 2255 petition for him. *Id.* at 1090. Martin's attorney thereafter misled Martin—he lied to him about the filing deadline, repeatedly lied to him about the status of his case, refused to communicate with him or his family, neglected to file any documents and failed to return his paperwork to him despite repeated requests. *Id.* at 1095. The court held that Martin could not be blamed for his untimely § 2255 filing because the untimeliness was due to his attorney's serious misconduct. *Id.* at 1096.

In *Muhammad*, the Eighth Circuit found a petitioner failed to establish extraordinary circumstances justifying equitable tolling when his attorney ignored him but did not mislead him. *Muhammad v. United States*, 735 F.3d 812, 815–16 (8th Cir. 2013). Muhammad claimed that his trial counsel initially stated she would file a § 2255 petition on his behalf and then thereafter refused to communicate with him. *Id.* Muhammad assumed she was working on his case and did not pursue the matter further until much later. *Id.* at 816. The court noted that Muhammad's attorney did not lie to him about the deadlines for filing the motion, repeatedly tell him she would file the motion, fail to communicate critical information about his case, nor withhold paperwork from him, as was the case in *Martin*. *Id.* While the court did not "condone" the

attorney's failure to respond to the petitioner's attempts to contact her, the attorney's actions did not amount to "extraordinary circumstances" that prevented Muhammad from timely filing his § 2255 petition. *Id.*

Here, I find that Scherle's misconduct during his representation of Yates in PCR-1 initially constituted extraordinary circumstances. Like in *Martin*, Scherle misled and deceived Yates. Yates continuously asked Scherle whether PCR-1 was active and Scherle told him that it was. *See* Doc. No. 65 at 65:4–18. When Scherle visited Yates in prison in February 2007, he told Yates PCR-1 was current and would go to trial that fall. *See id.* at 66:8–67:6. There was no factual basis for Scherle to make these statements. He knew about the June 31, 2006, dismissal deadline but failed to take any action. *See id.* at 42:8–23. He allowed the deadline to pass doing anything to prevent dismissal. He then waited until June 20, 2008, to apply to reinstate PCR-1, only after Yates discovered he had failed to take any steps to prevent dismissal. Failing to take any action in PCR-1 for nearly two years is not an "oversight," as Scherle describes and Wachtendorf argues. *See id.* at 50:14; Doc. No. 76 at 41. Instead, Scherle engaged in egregious attorney misconduct. Not only did he mislead Yates for nearly two years about the status of PCR-1, but he then failed to prevent its dismissal even though he was fully aware of the "try or dismiss" deadline.

Yates learned that PCR-1 was dismissed in June 2008, after the county clerk's office returned a motion he attempted to file.[14] Scherle told Yates he was going to get PCR-1 reinstated, but he then stopped communicating with Yates and Yates did not know

---

[14] I find Yates to be credible in his testimony that he did not know about the dismissal of PCR-1 until June 2008. The testimony provided by Metzgar, Scherle and Judge Deck demonstrates that Yates was an active and interested participant in his litigation and would have taken steps immediately to contact Scherle and/or the court if he had learned of the dismissal at an earlier time. I also find, for the same reason, that Yates was credible in testifying that he did not receive responses to his July 3, 2006, and February 16, 2007, requests to the clerk's office for PCR-1's docket.

about the attempt to reinstate until much later. *See* Doc. No. 36-2 at 1; Doc. No. 65 at 73:3–74:4. Yates argues that extraordinary circumstances persisted even after June 2008 because Scherle's egregious misconduct caused the Iowa state courts to deny every subsequent effort by Yates to have his postconviction case heard. *See* Doc. No. 32-1 at 20. Yates argues that it was reasonable for him to file additional postconviction cases in state court because caselaw relating to Iowa's three-year statute of limitations for postconviction cases, and whether ineffective postconviction counsel could provide relief from that limitations period, was not consistently applied. *See id.* at 28.

Extraordinary circumstances are those beyond Yates' control that made it impossible for him to file a timely habeas petition. Once Yates learned in June 2008 that PCR-1 was dismissed and Scherle had been misleading him, no extraordinary circumstances existed that prevented him from filing a § 2254 petition. Even though § 2244(d)(1)'s one-year statute of limitations expired on July 1, 2007, he would have had a strong argument for equitable tolling in June 2008 had he filed at that time because of Scherle's misconduct. However, equitable tolling does not extend June 2008. Indeed, even if it was reasonable for Yates to file additional postconviction cases in state court, as he argues,[15] he did not file PCR-3 until June 2, 2011, nearly three years after he learned PCR-1 had been dismissed and Mr. Scherle stopped communicating with him. Additionally, even if Yates reasonably thought he could file another postconviction case in state court, he could have also filed a protective § 2254 petition in federal court and asked the federal court to stay the petition until state remedies were exhausted. *See Pace,*

---

[15] The cases Yates cites as demonstrating an inconsistent application of Iowa law were not decided until after Yates filed PCR-3. *See Lado v. State*, 804 N.W.2d 248 (Iowa 2011); *Hrebk v. State*, No. 13-1619, 2015 WL 6087572 (Iowa Ct. App. Oct. 14, 2015); *Allison v. State*, 914 N.W.2d 866 (Iowa 2018). Thus, it is difficult to conclude that it was reasonable for Yates to file PCR-3 when *Dible v. State* was still controlling law. *See Dible*, 557 N.W.2d at 884 (holding ineffective assistance of postconviction counsel is not an exception to Iowa's three-year statute of limitations for postconviction actions).

544 U.S. at 416 (a petitioner seeking state postconviction relief can avoid trying to exhaust state remedies and finding out at the end that he never properly filed in state court by filing a protective habeas petition in federal court).

Yates urges that I utilize an approach like the one in *Dixon v. Dormire*, 263 F.3d 774 (8th Cir. 2001). *See* Doc. No. 32-1 at 1. In *Dixon*, the Eighth Circuit recognized that the Supreme Court had recently held the exhaustion doctrine requires a state prisoner to file for any available discretionary review in the state's highest court prior to filing for federal habeas relief. *Dixon*, 263 F.3d at 776 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 847–48 (1999)). However, the Eighth Circuit explained in *Dixon* that the State of Missouri, where the underlying state court convictions occurred, had not consistently asserted that the failure to seek a discretionary transfer is a bar to federal habeas relief. *Id.* at 781. The court held the exhaustion doctrine did not apply because the petitioners had no reasonable notice that the state would "change horses in midstream" and assert the petitioners' failure to seek discretionary review in state court as a defense to their federal habeas claims. *Id.* at 782.

Yates argues that a similar result should apply here because he "went into post-conviction reasonably thinking he could get similar results to reinstate his [case] based upon principles of ineffective counsel . . . ." *See* Doc. No. 32-1 at 32. However, as I explained above, even if I accept Yates' argument that he reasonably thought the state courts would hear his postconviction case, he did not file PCR-3 until three years after PCR-1 had been dismissed. There simply is no argument or evidence before me that would allow equitable tolling for this three-year period.

Extraordinary circumstances also do not exist if Yates' 2012 resentencing constitutes a new judgment. Under this scenario, Yates' new judgment became final on January 10, 2016, and Yates thus needs to show equitable tolling applies from January 10, 2017, to September 26, 2017, when he filed his § 2254 petition. Nothing during that period of time prevented Yates from filing his § 2254 petition. The state trial court found

PCR-3 was untimely on September 6, 2012, which Yates did not appeal. *See* Doc. No. 16-2. On August 21, 2016, the Iowa Court of Appeals held PCR-4 was untimely and barred by claim preclusion. *See Yates*, 2016 WL 7393896, at *1. While the appeal of the trial court's denial of Yates' motion to reopen PCR-1 was pending when he filed his § 2254 petition, it was not reasonable after his many years of little success to believe the Iowa Court of Appeals would reverse the trial court and allow PCR-1 to be reopened. Even if this was a reasonable belief, nothing prevented Yates from filing his § 2254 petition sooner.

Therefore, I find that no extraordinary circumstances existed from June 2008 to September 26, 2017, so as to equitably toll the statute of limitations during that lengthy period of time. While Scherle's conduct was egregious, the extraordinary circumstances arising from the conduct ended in June 2008, when Yates (finally) learned that PCR-1 had been dismissed.

### b.    Diligence

While I have determined that Yates cannot demonstrate extraordinary circumstances extending beyond June 2008, I will also address whether Yates meets the diligence requirement. The diligence required for equitable tolling is reasonable diligence, not maximum feasible diligence. *Holland*, 560 U.S. at 653. "'Due diligence therefore does not require a prisoner to undertake repeated exercises in futility or to exhaust every imaginable option.'" *Anjulo-Lopez v. United States*, 541 F.3d 814, 818 (8th Cir. 2008) (quoting *Aron v. United States*, 291 F.3d 708, 712 (11th Cir. 2002)). But diligence does "at least require that a prisoner make *reasonable* efforts to discover the facts supporting his claims." *Anjulo-Lopez*, 541 F.3d at 818 (citing *Aron*, 291 F.3d at 712).

In *Holland*, the Supreme Court found a petitioner acted with reasonable diligence when he wrote numerous letters to his attorney requesting information and providing

direction, contacted the court to learn about the status of his case, tried to have his attorney removed for failure to pursue his case and filed a pro se habeas petition the same day he learned it was late. *Holland*, 560 U.S. at 653. The Eighth Circuit has found diligence where a petitioner hired legal counsel well ahead of the deadline, "did everything in [his] power to stay abreast of the status of his case," provided original documents to his attorney to assist with the petition, file a complaint with the state bar and filed motions with the court seeking an extension of time and the return of documents submitted to the attorney. *Martin*, 408 F.3d at 1095. The Eighth Circuit found diligence was not demonstrated where a petitioner did not attempt to contact the court to learn about the status of his case and did not file a pro se habeas petition immediately upon learning of the deadline, but instead simply assumed his attorney was working on his case even though his attorney did not respond to his communications. *Muhammad*, 735 F.3d at 815–17. The Eighth Circuit has also found a lack of diligence when a petitioner failed to take any action for several months after it became clear that his hired attorney was not effectively pursuing his available remedies. *Williams v. Kelley*, 830 F.3d 770, 773 (8th Cir. 2016).

I find that Yates was diligent up until June 2008, when he learned that PCR-1 had been dismissed. The testimony of Metzgar, Scherle and Judge Deck demonstrates Yates was a diligent client who frequently contacted his attorneys. Further, Yates testified about his many phone calls and letters with Scherle. *See* Doc. No. 65 at 63:11–64:8. Yates regularly asked Scherle about the status of PCR-1 and was always told that the case was current. Yates even sent letters to the clerk's office seeking copies of PCR-1's docket (but did not receive replies). However, I find Yates' diligence ended after he learned in June 2008 that PCR-1 had been dismissed. Despite learning about the dismissal, and not knowing about the motion to reinstate until years later, Yates did not file a § 2254 petition. Nor did Yates file his subsequent postconviction petition (PCR-3) until nearly three years after learning that PCR-1 was dismissed.

A petitioner does not necessarily have to act immediately after becoming aware that his counsel had not taken appropriate action. *See Rodriguez-Ramos v. United States*, Nos. C13-4034-MWB, CR10-4011-2-MWB, 2014 WL 1024197, at *7 (N.D. Iowa Mar. 17, 2014); *Koons v. United States*, 995 F. Supp. 2d 905, 914 (N.D. Iowa 2014). "Even so, 'reasonable diligence' requires a [petitioner] to do something more than watch the statute of limitations run out, where the record would show to a duly diligent person that the statute of limitations was running." *Gonzalez-Gonzalez v. United States*, No. C16-4076-MWB, No. CR12-4038-MWB, 2017 WL 1027034, at *4 (N.D. Iowa Mar. 16, 2017) (citing *Anjulo-Lopez*, 541 F.3d at 818–19). Here, Yates did not exercise reasonable diligence after June 2008, as he did not file another state PCR petition until nearly three years later and did not file a § 2254 petition until September 26, 2017.

Yates likewise has not demonstrated diligence if his 2012 resentencing is a new judgment that reset his federal habeas clock. Under this scenario, Yates would have to show diligence from January 10, 2017, one year after that new judgment became final, until September 26, 2017, when he filed his § 2254 petition. Yates has not put forth any facts that could show he was diligently pursuing federal rights during this eight-month period. Waiting for eight months after the deadline expired, with no excuse for such a delay, is simply too long. *See Holland*, 560 U.S. at 653 (petitioner diligent where he filed petition same day he learned it was late); *Williams*, 830 F.3d at 773 (petitioner not diligent where he failed to act for several months after learning his attorney likely was not going to file his petition).

It is true the appeal of the state trial court's denial of Yates' motion to reopen PCR-1 was pending when Yates filed his § 2254 petition. But there is no legal basis to believe that appealing a denial of a motion to reopen, so many years after the case was originally dismissed, constituted reasonable diligence for the purposes of pursuing his federal remedy. If anything, it was unreasonable for Yates to pursue state remedies when

the state courts have previously denied his attempts on so many occasions. Accordingly, Yates has failed to show diligence in months after January 10, 2017.[16]

There is no doubt that Scherle acted in an unprofessional and duplicitous manner, and that his misconduct had an extremely negative impact on Yates' ability to exercise his post-conviction rights. Moreover, as the forgoing analysis shows, this issue is complex, and there is no clear guidebook for incarcerated individuals on how to navigate the system when their attorneys act so disgracefully. I am extremely sympathetic to Yates' unfortunate predicament. However, I must focus on the facts and applicable law. The question before me is whether equitable tolling applied so as to allow Yates to wait until September 26, 2017, to file his § 2254 petition. Regardless of whether his state court judgment became final on May 4, 2004, or January 10, 2016, Yates is not entitled to equitable tolling beyond his discovery, in June 2008, that PCR-1 had been dismissed. Thus, Yates' § 2254 petition is time barred. Because the statute of limitations bars Yates' petition, I need not address his argument that cause and prejudice excuses his failure to exhaust state remedies.

## VI.    CERTIFICATE OF APPEALABILITY

A certificate of appealability may be granted only when the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2);

---

[16] Yates argues that the Supreme Court's decision in *McQuiggin v. Perkins*, 569 U.S. 383, 399–400 (2013), instructs that timeliness is not a discrete requirement for establishing equitable tolling. *See* Doc. No. 77-1 at 17–18. However, *McQuiggin* does not concern equitable tolling; it addresses the "actual innocence" gateway to federal habeas review. *McQuiggin*, 569 U.S. at 386. A convincing showing of actual innocence allows a habeas petitioner to overcome a procedural bar, including the expiration of the statute of limitations, to have the merits of his constitutional claims considered. *Id.* The Court held a petitioner's diligence should be considered not discretely, but as part of the assessment whether actual innocence has been convincingly shown. *Id.* at 399–400. Yates does not argue actual innocence—he argues he meets the requirements of equitable tolling. Thus, *McQuiggin* is inapplicable here.

*see also Miller-El v. Cockrell*, 537 U.S. 322, 336–37 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076–77 (8th Cir. 2000); *Mills v. Norris*, 187 F.3d 881, 881 n.1 (8th Cir. 1999); *Carter v. Hopkins*, 151 F.3d 872, 873–74 (8th Cir. 1998); *Ramsey v. Bowersox*, 149 F.3d 749, 759 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox*, 133 F.3d at 569. Thus, "[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Miller-El*, 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Similarly, when a federal habeas petition is dismissed on procedural grounds without reaching the underlying constitutional claim, "the [movant must show], at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *See Slack*, 529 U.S. at 484.

Having thoroughly reviewed the record in this case, I find Yates failed to make the requisite "substantial showing" with respect to his untimely § 2254 petition. *See* 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b). Because he does not present a question of substance for appellate review, a certificate of appealability will not issue. If Yates desires further review of his § 2254 petition, he may request the issuance of the certificate of appealability by a circuit judge of the Eighth Circuit Court of Appeals in accordance with *Tiedeman v. Benson*, 122 F.3d 518, 521 (8th Cir. 1997).

## VII.   CONCLUSION

For the reasons set forth herein:

1.   Wachtendorf's motion (Doc. No. 78) to strike Yates' pro se supplemental brief (Doc. No. 77-2) is **granted**.

2.   Wachtendorf's motion (Doc. No. 16) to dismiss for failure to state a claim is **granted**.

3.   Yates' motion (Doc. No. 36) for a hearing on the merits of his petition is **denied**.

4.   Yates' petition under 28 U.S.C. § 2254 is denied and this action is **dismissed with prejudice**.  A certificate of appealability shall not issue.


**IT IS SO ORDERED.**

**DATED** this 5th day of November, 2019.

_____
Leonard T. Strand, Chief Judge